IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LIBERTY SURPLUS INSURANCE CORPORATION, | : : : | CIVIL ACTION |
| v. | : : : | |
| AXA INSURANCE COMPANY and AXA CORPORATE SOLUTIONS ASSURANCE, S.A., et al. | : : : | No. 16-CV-4977 |

**MEMORANDUM**

**DITTER, J.**                                                                                 June 26, 2018

      Plaintiff, Liberty Surplus Insurance Corporation, has brought this action seeking a declaration that losses sustained by one of its insured are covered by policies issued by AXA Insurance Company ("AXA US") and AXA Corporate Solutions Assurance, S.A. ("AXA CS"). Before me is AXA CS's motion to dismiss for lack of personal jurisdiction and improper forum pursuant to Federal Rule of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) and Plaintiff's response. I have also considered the supplemental filings submitted after the completion of jurisdictional discovery.[1] For the reasons that follow, AXA CS's motion will be granted.

---

[1] On October 10, 2017, I partially granted Plaintiff's motion for jurisdictional discovery. Plaintiff was granted leave to seek limited jurisdictional discovery as to AXA CS alone. After the completion of jurisdictional discovery, the parties filed supplemental memoranda of law.

**I.  FACTS**[2]

Ardagh US is one of a family of companies whose parent, Ardagh Global, is based in Luxemburg.  AXA CS issued a policy to Ardagh Global providing global excess coverage above local, primary policies.[3]  This policy covered Ardagh Global's subsidiary companies including Ardagh US.

Ardagh US is a Delaware corporation headquartered in Pennsylvania that manufactures metal containers.  In the course of its business, Ardagh US provided defective cans to a company that sold tuna.  As a result of the defect, the product had to be recalled causing heavy losses to the tuna company and thus to Ardagh US.

Liberty Surplus had issued a product recall insurance policy to Ardagh US.[4]  AXA US had issued a policy for commercial liability as well as a commercial liability umbrella policy to Ardagh US.[3]  Ardagh US made a claim to Liberty Surplus, which acknowledged coverage and paid an amount in excess of $75,000.  Ardagh US also forwarded a claim to AXA US which denied coverage based on exclusions in its policy.

---

[2]  I reiterate the facts here in the interest of clarity.

[3]  AXA CS is a corporation organized and existing under the French Republic with its principal place of business in Paris, France.

[4]  Liberty Surplus is incorporated in New Hampshire with its principal place of business in Boston, Massachusetts.

[3]  AXA US is incorporated in Delaware with its principal place of business in New York, New York.

## II. DISCUSSION

### A. PERSONAL JURISDICTION

I may exercise personal jurisdiction over AXA CS, a non-resident defendant, to the extent provided by Pennsylvania law. Fed. R. Civ. P. 4(k)(1)(A). Under Pennsylvania's long-arm statute, jurisdiction shall extend "to all persons . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with [Pennsylvania] allowed under the Constitution of the United States. 42 Pa. Cons. Stat. 5322(b). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-472 (1985) (citations omitted). A "defendant's conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Here, AXA CS argues that this court lacks personal jurisdiction because it has no connection with Pennsylvania and could not have foreseen that it would be forced to litigate in a Pennsylvania court.

Personal jurisdiction may be based on either some from of consent to personal jurisdiction, such as a contract forum selection clause, or defendant's contacts with the forum. *Synthes, Inc. v. Emerge Medical, Inc.*, 887 F.Supp.2d 598, 606 (E.D. Pa. 2012). There are two types of personal jurisdiction founded on a defendant's contact with this

forum, general and specific.

AXA CS claims that it does not have the continuous or systematic contacts with Pennsylvania to justify the exercise of general jurisdiction and did not have contacts in Pennsylvania pertaining to this case to satisfy specific jurisdiction. In addition, AXA CS contends that I lack personal jurisdiction because a forum selection clause governs and selects Ireland as the forum.

1. **General Jurisdiction**

General jurisdiction may be exercised over a defendant if the defendant's "'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman,* 571 U.S. 117, 139 (2014) (quoting *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919 (2011)). That is not the case here. Although it is an eligible surplus lines insurer and may have had sporadic contacts in Pennsylvania, AXA CS has "obtained no licenses, registrations, or authorizations in or from the state of Pennsylvania." *See* Def.'s Reply Mem. at 6 (citing Mody Cert., Ex. 1 at 12). AXA CS is not a foreign corporation authorized to do business in Pennsylvania, is not a citizen of Pennsylvania, does not maintain a principal place of business here, nor does it have the requisite "continuous and systematic" affiliations required for general jurisdiction. *Daimler AG,* 571 U.S. at 139. As a result, I conclude Liberty Surplus has failed to establish general jurisdiction.

### 2. Specific Jurisdiction

Specific jurisdiction over an out-of-state defendant can be established when a defendant "purposefully avails itself of the privilege of conducting activities in the forum State, thus invoking the benefits and protections of its laws." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 881-882 (2011). Here, Liberty Surplus must show that AXA CS's conduct in this matter was of the type that it could reasonably expect to be brought into a Pennsylvania court if what it had done caused harm.

I find that specific jurisdiction is not established. AXA CS is a foreign insurer that had no contact with Pennsylvania in connection with the negotiation and issuance of the policy at issue and did not expressly or purposely conduct any activity in Pennsylvania. For example, the premium for the AXA global policy was paid by the Ardagh Group out of Luxembourg. *See* Def. Mot. to Dismiss, Dale Decl. ¶5 (Doc. 34-5). Moreover, AXA CS had no contact with Ardagh US or any entity acting on its behalf located in Pennsylvania in connection with the underwriting or issuance of the AXA global policy. *Id.*

Plaintiff counters, however, that personal jurisdiction is established because AXA CS was on notice that there could be a claim in Pennsylvania and that AXA CS sent four letters to Ardagh US in Pennsylvania relating to the underlying claim.

I find that AXA CS's contacts in Pennsylvania do no rise to the level of the

minimum contacts requirement.[4] Notice of a possible claim and four letters are hardly enough to establish specific jurisdiction. There is no personal jurisdiction.

### 3. Forum Selection Clause

Liberty Surplus is seeking to recover under the AXA global policy. AXA CS argues that Plaintiff is foreclosed from pursuing its case in this court because the global insurance policy contains a forum selection clause providing for exclusive jurisdiction in the courts of Ireland for all disputes arising from the policy.[5] Liberty Surplus contends that the forum selection clause should not apply to it because it is not a signatory to the policy. Liberty Surplus also argues it is not pursuing a contractual claim on the basis of an assignment to Liberty by Ardagh US of its claim against AXA CS but rather that it is a co-insurer seeking equitable contribution

"It is widely accepted that non-signatory third-parties who are closely related to [a] contractual relationship are bound by forum selection clauses contained in the contracts underlying the relevant contractual relationship." *First Financial Management Group , Inc. v. University Painters of Baltimore, Inc.*, 2012 WL 1150131, at *3 (E.D. Pa. April 5, 2012) (Baylson, J.) (quoting *Donachy v. Intrawest U.S. Holdings, Inc.*, 2011 WL

---

[4] The admonition used to be, do right and fear no man – don't write and fear no woman. Shall we now redo – don't write and fear no jurisdiction?

[5] The relevant provision states: "[i]n the event of a dispute concerning this Policy it is understood and agreed by both the Insured and the Insurer that the resolution of such dispute shall be governed by the laws of the Republic of Ireland whose courts shall have exclusive jurisdiction." *See* Def. Mot. to Dismiss, Dale Decl. ¶6 (Doc. 34-5); AXA Global Policy (Doc. 34-6) Ex. 1 at 2.

2973543, at *2 (D.N.J. July 21, 2011)). In considering the question of whether to bind a non-signatory to a forum selection clause, many courts have taken "a common sense, totality of the circumstances approach that essentially inquires into whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause." *Synthes, Inc. v. Emerge Medical, Inc.*, 887 F.Supp.2d 598, 607 (E.D. Pa. 2012) (Buckwalter, J.) (citations omitted).

In its complaint, Liberty Surplus has set forth claims against AXA CS for a declaration construing the AXA global policy, equitable contribution, and specific performance of the AXA global policy. *See* Compl. ¶¶ 76-101. It stands to reason that if Liberty Surplus seeks recovery as a beneficiary of the AXA global policy, it should be held to the contract's terms. Liberty Surplus appears to argue, however, that its equitable contribution claim is not governed by the contractual forum selection clause, and therefore, the forum selection clause should be inapplicable in general. This argument fails.

The equitable contribution claim is based, at least in part, upon obligations created by the AXA global policy. *See* Compl. ¶¶ 92-96. Therefore, all of Liberty Surplus's claims against AXA CS come under the AXA global policy. As beneficiary of the global policy, Liberty Surplus, even though a non-signatory, may be bound by the forum selection clause. As it is fair and reasonable to hold Liberty Surplus to the terms of the contract as a whole, I conclude that the forum selection clause governs. Absent other

grounds for finding personal jurisdiction, *supra*, any dispute against AXA CS regarding the AXA global policy must be pursued in the courts of Ireland.[6]

### III. CONCLUSION

AXA CS's contacts with the Eastern District of Pennsylvania are insufficient to establish personal jurisdiction. Moreover, the forum selection provision dictates that any claim against AXA CS regarding the AXA global policy must be brought in the courts of Ireland.

I conclude that granting leave for Liberty Surplus to amend its complaint would be futile. Accordingly, AXA CS's motion to dismiss will be granted.

An appropriate order follows.

---

[6] I acknowledge Liberty Surplus's argument that engaging in parallel, transcontinental litigation with AXA CS and AXA US will be more time-consuming and cumbersome. However, the dictates of due process outweigh convenience considerations.